UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Sawitre Ann Massey<br><br>Plaintiff<br><br>v.<br><br><br><br>The Boeing Company<br><br>Defendant | Case No.: 2:14-CV-3936-RMG-BM<br><br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

## JURISDICTION AND PARTIES

1.      This suit is brought and jurisdiction lies pursuant to the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §2000e *et seq.*

2.      All conditions precedent to jurisdiction under § 706 of Title VII, 42 U.S.C. §2000e-5, have occurred or been complied with.

   a.    A charge of employment discrimination on basis of sex, age, race, and gender discrimination and failure to hire was filed by the Plaintiff with South Carolina Human Affairs Commission ("SHAC") and U.S. Equal Employment Opportunity Commission ("EEOC").

   b.    Notification of the Right to Sue was received from the Employment Security Commission ("EEOC") on or about July 15, 2014.

   c.    This Complaint has been filed within the 90 days of receipt of the EEOC's Notice of the Right to Sue.

3.      Plaintiff, Sawitre Ann Massey was a citizen and resident of the State of South Carolina, and resided in Charleston County, South Carolina during the time of all occurrences in this matter.

4.      All discriminatory employment practices alleged herein were committed within the State of South Carolina.

5.      Defendants, The Boeing Company, hereinafter collectively referred to as "Defendant Company", upon information and belief, are corporations incorporated and operating by virtue of laws of the State of South Carolina and the County of Charleston.

6.      Defendant Companies, is a "person" within the meaning of §701 Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

7.      Defendant Companies, is an industry that affects commerce within the meaning of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

8.      Defendant Companies employs fifteen (15) or more employees and is an "employer" within the meaning of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

9.      The parties, matters and all things and matters hereinafter alleged are within the jurisdiction of the Court.

## STATEMENT OF FACTS

10.     In or around 1988 the Plaintiff was hired by the Defendant as an electrical Assembly and installation technician. Plaintiff worked for the Defendants until 1999. Plaintiff was rehired by the Defendants in 2007 as a Production Manager and was transferred to Defendants facility in Charleston, SC following the opening of the new facility.

11.     The Plaintiff was efficient and effective in her work.

12.     The Plaintiff was discriminated against based on her race, gender and age.

13.     The Plaintiff is a member of a protected class due to her age, fifty-five (55) years old.

14.     The Plaintiff is a member of a protected class due to the fact her ethnicity is Thai.

15.     The Plaintiff was the only female production manager at Defendants facility.

16.     The Plaintiff received write ups and reprimands for a number of alleged infractions when she had not committed the infraction.

16.     The Defendants' younger and white employees would commit the same minor infractions but would not be issued write-ups and in fact would not be reprimanded at all.

17.     In or around February 2012, the Defendant's Supervisor complaied that the Plaintiff did not understand the work packet, that she didn't know how to speak English correctly, and that she did not know how to write emails.

18.     The Defendant's moved the Plaintiff to another building, from AFT to Final Assembly to appease their Supervisor.

19.    In or around April 2012, The Plaintiff was singled out and moved to work with other managers for the Defendant's, Pete Anderson and John Choi;

20.    Again, in June 2012, the Plaintiff was singled out and moved to another area to work with Defendant's Supervisor Chearly Thomlinson. At that time, Plaintiff was told by upper management that they didn't have any work for her.

21.    In October 2012, she was moved yet again to the role of Position One System Package Manager of the second shift.

22.    Between October 2012 and January 2013, the Plaintiff's production rate of her team increased with the Plaintiff as their second shift manager.

23.    Defendants Supervisor, Travis Massie would put the plaintiff down in front of other managers and making disparaging comments about her because she was an older Asian.

24.    Defendants Supervisor would make statements that the plaintiff shouldn't be a manager because she can't speak English on a regular basis.

25.    Defendants Supervisors and coworkers would mock the Plaintiff when she spoke belittling her in front of her employees.

26.    Defendants Supervisors and coworkers made fun of the smell of the Plaintiff's Thai food at lunch on a regular basis. The Plaintiff ate by herself out of fear of being harassed over her meal.

27.    The Plaintiff complained to her supervisor, Ken Rawls, regarding the discrimination and the hostile environment that was being created by the Plaintiff's supervisors. Mr. Rawl's advised the plaintiff he would speak with his manager Pete Anderson, to get the matter resolved.

28.    Defendant's Supervisor Mr. Ken Rawls ignored the Plaintiff's Complaint, never did any investigation and the Plaintiff began being retaliated against.

29.    The Plaintiff was told that she could not handle her workload because she didn't understand it due to her being Asian. The Plaintiff was never told similar things when she worked for Boeing at other locations.

30.    Plaintiff was the only female manager with 15 years of Boeing Manufacturing experience.

31.    The Plaintiff had not experienced harassment from Defendant's management until she was promoted to the Charleston Facility.

32.    In or around February of 2013, Plaintiff had a requirement for hiring Team Leaders. Defendant's Employees nominate candidates to be interviewed by the Management.

33.    In or around February of 2013, Defendant's human resource officer, Brandon Weaver, notified the Plaintiff that the top three candidates were Dan Rasmussen, Scott Stone, and Tammy Davis.

34.    Plaintiff received a Team lead structured Interview and instruction booklets for Defendant's Human Resource Officer, Brandon Weaver.

35.    Defendant's interviewers were First Shift Manager Dwight Stigler, Seth who was Industrial Manager, Kyle who was a Industrial Manager as well, and the Plaintiff were those chosen to conduct the interview of Mr. Rasmussen, Mr. Stone, and Ms. Davis.

36.    Defendant's interviewers and the Plaintiff had to all agree on the consensus scores given to the Interviewees.

37.    On or around February 21, 2014 Defendant's and the Plaintiff interviewed Mr. Stone who received a consensus score 4.43.

38.    On or around February 22, 2013 Defendant's and the Plaintiff interviewed Mr. Rasmussen and he received a consensus score of 5.0.

39.    On or around February 25, 2013 Defendant's and the Plaintiff interviewed Ms. Davis, wherein the Plaintiff noticed Mr. Stigler was giving the female employee much lower score than her male co-workers. Mr. Stigler directed the Plaintiff to change the score on Ms. Davis's test. Plaintiff complied and changed the scores as requested by Defendant's manager Dwight Stigler.

40.  Defendant's first shift manager Mr. Stigler  stated to the committee and the Plaintiff that the candidate with the highest score had to be the selection for promotion, the committee agreed with Mr. Stigler, but the Plaintiff disagreed.

41.    The Plaintiff advised the committee that she wanted to check with Human Resources Officer Brandon Weaver and her manager Ken Rawls before making her selection, as the Plaintiff had the final approval.

42.    Plaintiff confirmed with the Defendant's human resource officer that the highest scored candidate does not need to be selected.

43.    Plaintiff went Defendant's Manager and her supervisor Ken Rawls to discuss promoting Ms. Davis instead of Mr. Stone, even though Mr. Stone had a higher consensus score. Defendant's Manager Ken Rawls informed the Plaintiff after verifying with Defendant's Human Resources that the choice of candidates ultimately was up to the Plaintiff and that she didn't have to go with the highest scoring candidate.

44.     In or around February 28, 2013 the Plaintiff met with Defendant's Senior Manager Ken Rawls to confirm that the candidate with the highest promotion did not have to be offered the promotion. Plaintiff's Manager confirmed that her understanding was correct.

45.     Once Defendant's Manager and Human Resource Officer advised the Plaintiff that she did not have to choose the highest scoring candidate for the promotion the Plaintiff then changed her recommendation to promote Ms. Davis and not Mr. Stone.

46.     Defendant's hiring and promotion process was not clear and not listed in any of the booklets provided to the Plaintiff. Plaintiff Ms. Massey, discussed her concerns with Defendant supervisor Ken Rawls and human resource officer Brandon Weaver.

47.     Defendant's supervisor Ken Rawls had taken leave from March 4, 2013 to approximately March 22, 2013. On March 8, 2013 Plaintiff received a call from Defendant's Investigator Michael, to investigate her team leader selection process.

48.     Plaintiff Massey requested that the Defendant's investigator Michael to send her the consensus form to her that he was referring to in her interview. Plaintiff reviewed the form in question and realized that none of the consensus scores which were agreed to by the committee, the values were never changed. Plaintiff only changed the individual interviewer's score, which she was told to do by Mr. Stigler.  Plaintiff realized that the individual interviewer's score is not a part of the consensus score and does not impact the qualifications of the score required for promotion.

49.     On or around March 18, 2013 Defendants called Plaintiff Massey to the Employee Services Center where she was joined by third level manager, Jennifer Boland-Masterson, Senior Manager Sam Brown and Human Resource Officer Kyle.  Defendant's Human Resource Officer Kyle presented the Plaintiff with discharge papers for falsifying a company document in the team lead process in order to manipulate the outcome.

50.     Plaintiff Massey requested from Defendant's managers and human resource officer to allow her to appeal this matter. At no time did she falsify documents, she received permission from her Lead Supervisor and Human Resources that the ultimate choice for team leaders was her choice and she didn't have to go by score.

51.     Defendant's investigator Michael asked her if she thought it was fair that someone with a lower score was chosen over someone with a higher score. Plaintiff, stated it was neither fair or not fair, it was a business decision based on which individual was the most qualified.

52.     Plaintiff Massey stood behind her decision to promote a female to the team leader position. The Plaintiff told the Defendant's investigator that Ms. Davis always gave 100% , made very few mistakes, and followed through on all her commitments. Plaintiff discussed her decision to promote Ms. Davis instead of Mr. Stone with her Supervisor Ken Rawls and he agreed with the Plaintiff's decision.

53.    Plaintiff Massey is aware that there is an overall shortage of female managers and Plaintiff felt targeted, and had to make sure she had approval for fear of being demoted since she was the only Female Production Manager in the Defendant's facility.

54.    Defendant's managers promoted individuals of their choosing and were not reprimanded for the promotion. Defendant's termination of the Plaintiff was merely pretextual and not the real reason behind the termination.  The real reasons being that she was Thai and over 55 and had reported the discrimination.

55.    Despite Plaintiff's complaints and appealing of her termination Defendant did not take appropriate action to resolve the problems. Defendant's further pretextualy terminated the Plaintiff due to her sex and gender.

## FOR A FIRST CAUSE OF ACTION
### Violation of Civil Rights/Racial Discrimination: Title VII

56. The Plaintiff repeats and reiterates each and every allegation as if fully set forth herein.

57. The Plaintiff is a member of a protected group on the basis of her race.  The Plaintiff was retaliated against and terminated based on her race and color in violation of Title VII of the Civil Rights Act of 1964, as amended (42 USCS §§ 2000e et seq.), the South Carolina Human Affairs Law and the Equal Employment Opportunity Act.

58. The Defendants' stated reasons for preferential treatment, retaliation, and wrongful discharge were mere pretext, for the discrimination against the Plaintiff based on her race or color.

59. The Defendants were wanton, reckless and intentional in the discrimination of the Plaintiff in the following particulars, to wit:

    a.    In failing to continue to employ the Plaintiff due to her race or color; and

    b.    By treating other non-Asian employees with preferential treatment.

60. In failing to protect the Plaintiff from racial discrimination, preferential treatment or retaliation, the Defendants acted with malice or reckless indifference to the federally protected rights set out under Title VII of the Civil Rights Act of 1964, as amended (42 USCS §§ 2000e et seq.), the South Carolina Human Affairs Law and the Equal Employment Opportunity Act.

61. The Defendants violated Title VII of Civil Rights Act of 1964, as amended (42 USCS §§ 2000e et seq.), the South Carolina Human Affairs Law and the Equal Employment Opportunity Act by allowing the racial discrimination, preferential treatment, and retaliation to exist in the workplace.

62. The Defendants' wrongful actions as set forth aforesaid constituted a hostile work environment for the Plaintiff.  The Defendants violated 42 U.S.C. §1981, Title VII of the Civil Rights Act of 1964, as amended (42 USCS §§ 2000e et seq.), by allowing a hostile work environment to exist regarding racial discrimination in the workplace.

63. The aforesaid conduct of the Defendants, its agents and servants, violates South Carolina and United States laws against retaliatory discharge and was, in fact, retaliatory in nature and in violation of Title VII of Civil Rights Act of 1964, as amended (42 USCS §§ 2000e et seq.) and racial discrimination under 42 U.S.C. §1981.

64. The Plaintiff's race and color were determining factors in the retaliation, disparate treatment and wrongful discharge of the Plaintiff.  But for the Plaintiff's race and color, she would not have been terminated.

65. As a direct and proximate result of the Defendants' discrimination on the basis of race or color, the Plaintiff has suffered a loss of wages, benefits, and employment opportunities.

66. The Defendants' discrimination against the Plaintiff has caused, continues to cause, and will cause the Plaintiff to suffer substantial damages for pecuniary losses, embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

67. Due to the acts of the Defendants, its agents and employees, the Plaintiff is entitled to injunctive relief and/or civil damages, back wages, plus interest, payment for lost benefits, and reinstatement of benefits and front pay.

## FOR A SECOND CAUSE OF ACTION
### Violation of Equal Rights Under 42 U.S.C. §1981

68. The Plaintiff repeats and reiterates each and every allegation as if fully set forth herein.

69. The Plaintiff is a member of a protected group on the basis of her race.  All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. The Plaintiff was retaliated against and terminated based on her race and color in violation of 42 U.S.C. §1981.

70. The Defendants' stated reasons for preferential treatment, retaliation and wrongful discharge were mere pretexts for the discrimination against the Plaintiff based on her race or color.

71. The Defendants were wanton, reckless and intentional in the discrimination of the Plaintiff in the following particulars, to wit:

    a.      In failing to promote or continue to employ the Plaintiff due to her race or color; and

    b.      By treating other non-black employees with preferential treatment.

72. In failing to protect the Plaintiff from racial discrimination, preferential treatment or retaliation, the Defendants acted with malice or reckless indifference to the federally protected rights set out under 42 U.S.C. §1981.

73. The Defendants violated 42 U.S.C. §1981 by allowing the racial discrimination, preferential treatment, and retaliation to exist in the workplace.

74. The Defendants' wrongful actions as set forth aforesaid constituted a hostile work environment for the Plaintiff.  The Defendants violated 42 U.S.C. §1981, by allowing a hostile work environment to exist regarding racial discrimination in the workplace.

75. The aforesaid conduct of the Defendants, their agents, servants, and employees violates South Carolina and United States laws against retaliatory discharge and was, in fact, retaliatory in nature and in violation of racial discrimination under 42 U.S.C. §1981.

76. The Defendants' wrongful discrimination, preferential treatment, and inappropriate behaviors as set forth aforesaid constituted racial discrimination against the Plaintiff which constitutes a violation of clear mandate of public policy of the State of South Carolina.

77. The Plaintiff's race and color were determining factors in the retaliation, disparate treatment, and wrongful discharge of the Plaintiff.  But for the Plaintiff's race and color, she would not have been terminated.

78. As a direct and proximate result of the Defendants' discrimination on the basis of race, color, the Plaintiff has suffered a loss of wages, benefits, and employment opportunities.

79. The Defendants' discrimination against the Plaintiff has caused, continues to cause, and will cause the Plaintiff to suffer substantial damages for pecuniary losses, embarrassment, humiliation, pain, and suffering, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

80. Due to the acts of the Defendants, their agents, servants and employees, the Plaintiff is entitled to injunctive relief and/or civil damages, back wages, plus interest, payment for lost benefits, reinstatement of benefits, and front pay and attorney fees and costs.

## FOR A THIRD CAUSE OF ACTION
### Violation of Age Discrimination in Employment Act (ADEA)

81. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

82. The Plaintiff is a member of a protected class due to her age, fifty-five (55) years old.

83. The Plaintiff had an exemplary job performance while she worked for the Defendants.

84.  The Plaintiff is a member of a protected group on the basis of her age.  The Plaintiff was an employee for a position that she was qualified for and was an individual over forty (40) years old.  The Plaintiff was removed from her position due to her age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the ADEA of 1967, as amended, 29 U.S.C. § 630.

85. The Defendants were wanton, and intentional in the discrimination of the Plaintiff in the following particulars, to wit:

a.      In failing to promote or continue to employ the Plaintiff in her original position due to her age;

b.      In terminating the Plaintiff due to her age; and,

c.      In terminating the Plaintiff and otherwise discriminating against the Plaintiff with respect to her compensation, terms, conditions, or privileges of employment due to her age.

86. That by reason of the aforesaid violations and recklessness, willfulness and wantonness of the Defendants, the Plaintiff has suffered severe emotional distress.

87. The Defendants violated the Title VII of the Civil Rights Act of 1964, as amended (42 USCS §§ 2000e et seq.) and the ADEA of 1967, as amended, 29 U.S.C. § 630 by allowing discrimination to exist in the workplace.

88. The Defendants' wrongful actions as set forth above constituted a hostile work environment for the Plaintiff.  The Defendant violated Title VII of the Civil Rights Act of 1964, as amended (42 USCS §§ 2000e et seq.), 46 ALR Fed 224 and the ADEA of 1967, as amended, 29 U.S.C. § 630 by allowing a hostile work environment to exist regarding age discrimination in the workplace.

89. That the aforesaid conduct of the Defendants, their agents and servants, violates South Carolina and United States laws against retaliatory discharge and was, in fact, retaliatory in nature and in violation of Title VII of Civil Rights Act of 1964, as amended (42 USCS §§ 2000e et seq.) and the ADEA of 1967, as amended, 29 U.S.C. § 630.

90. Employees outside the Plaintiff's protected class were treated more favorably by the Defendant.

91. The Plaintiff's age was the determining factor in the disparate treatment and demoting of the Plaintiff.  But for the Plaintiff's age, she would not have been demoted.

92. The Defendants' employment discrimination against the Plaintiff has caused, continues to cause, and will cause the Plaintiff to suffer substantial damages for pecuniary losses, embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

93. The Plaintiff is entitled to injunctive relief and/or civil damages from the Defendants as a result of the employment discrimination as alleged above.

94. Due to the acts of the Defendants, their agents and employees, the Plaintiff is entitled to injunctive relief and/or civil damages, back wages, plus interest, payment for lost benefits, and reinstatement of benefits and front pay.

## FOR A FIFTH CAUSE OF ACTION
### Breach of Contract

95. The Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

96. On or about February 12, 2010, the Plaintiff and the Defendants, their agents and employees, entered into a contract whereby the Defendants employed the Plaintiff to begin work at that time for an indefinite term.

97. The Plaintiff and the Defendants, their agents and employees, entered into a contract whereby the Defendants employed the Plaintiff to begin work at that time for an indefinite term.

98. The Plaintiff signed a number of documents when he was hired and he entered into a contract of employment.  The contract indicated he would be paid for working.  The Plaintiff fully performed his contractual obligations, and despite that fact, he was discharged.

99. The Plaintiff was efficient and effective in his work.

100.    The Defendants wrongfully terminated the Plaintiff's employment, breaching the contract of employment between the Plaintiff and the Defendants.

101.    As a direct and proximate result of the wrongful termination of the Plaintiff's employment, the Plaintiff has suffered a loss of income and benefits, has been deprived of contractual rights conferred by the aforesaid contracts, has had his ability to work in the field damaged, and has been otherwise injured and damaged in such amount as a judge and jury may determine.

102.    Due to the acts of the Defendants, their agents and employees, the Plaintiff is entitled to civil damages, back wages plus interest, payment for lost benefits, reinstatement of benefits, front pay, compensatory damages and punitive damages.

## REQUEST FOR RELIEF

103.    Plaintiff reiterates and realleges each and every allegation as if fully set forth herein.

104.    Due to the acts of the Defendants, Plaintiff suffered great emotional and mental distress, terror, fright, revulsion, disgust, humiliation, embarrassment, shock and indignities, lost wages, loss of front pay, back pay and other work benefits.

105.    That by reason of such wrongful acts of the Defendants, the Plaintiff has been damaged in such an amount to be determined by the trier of fact.

WHEREFORE, Plaintiff prays for the following relief:

1.    Judgment in favor of the Plaintiff and against all Defendants for all causes of actions in an amount which is fair, just and reasonable, and for compensatory damages;

2.    Prejudgment interest, costs and attorneys fees as may be allowed by law;

3.    Judgment in favor of the Plaintiff and against all Defendants with back pay and associated benefits she would have earned with all lost or diminished benefits such date to be determined by the trier of fact;

4.    Judgment in favor of the Plaintiff and against all Defendants for front pay and any other work benefits she lost in an amount to be determined by the trier of fact;

5.    Judgment in favor of the Plaintiff and against all Defendants for pain and suffering, embarrassment and humiliation, and emotional distress in an amount to be determined by the trier of fact; and

6.    Judgment against all of the Defendants, in such an amount of actual damages, punitive damages, attorney fees, costs of this action and any other relief this Honorable Court deems allowable under law, and just and proper.

**WIGGER LAW FIRM, INC.**

s/Joshua T. Howle
JOSHUA T. HOWLE, ESQUIRE
Federal I.D. # 11759
Attorney for the Plaintiff
8086 Rivers Avenue
North Charleston, SC  29406
(843) 553-9800
(843) 553-1648

Attorney for the Plaintiff

The 9th of October, 2014