IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| Sawitre Ann Massey, | ) | CIVIL ACTION NO. 2:14-3936-RMG-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| The Boeing Company, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This action has been filed by the Plaintiff asserting civil rights claims and a breach of contract claim against the Defendant Boeing Company.  Plaintiff, a former employee of the Defendant, alleges that she is over forty years old[1], Asian, Thai, and female.  In this lawsuit, Plaintiff alleges that the Defendant discriminated against her on account of her race, her sex,[2] and her national origin in violation of Title VII of the Civil Rights Act of 1965, 42 U.S.C. § 2000e, et. seq. (First Cause of Action), and that she was also discriminated against on account of her race in violation of 42 U.S.C. § 1981 (Second Cause of Action).  Plaintiff further contends that she was discriminated against on account of her age in violation of the Age Discrimination in Employment Act (ADEA),

---

[1]Plaintiff alleges that she was fifty-five years old in her Complaint.  See Complaint, ¶ 13.

[2]Contained in the narrative of her Compliant.  See Complaint, ¶ 12.



29 U.S.C. § 626, et seq. (Third Cause of Action).[3]  Finally, Plaintiff asserts a cause of action for breach of contract (Fourth[4] Cause of Action).  Plaintiff seeks monetary damages.  See generally, Complaint.

The Defendant has filed a motion for summary judgment, asserting that all of Plaintiff's claims are without merit.  Plaintiff has filed a memorandum in opposition to the Defendant's motion, to which the Defendant has filed a reply.  Defendant's motion is now before the Court for disposition.[5]

## Background and Evidence[6]

Plaintiff was originally hired by the Defendant in 1988 as an electrician, and received a promotion in 1997 to a manager position.  Plaintiff left the Defendant's employment in 1999, but

---

[3]Plaintiff also references the South Carolina Human Affairs Law, S.C.Code Ann. § 1-13-10, et seq., when discussing her claims.  See Complaint, ¶¶ 57, 60-61.  However, neither party discusses this statute in their briefs, and in any event the same standards and cases used to evaluate Plaintiff's federal claims would also apply to claims brought pursuant to this statute.  Burns v. South Carolina Dept. of Transportation, No. 05-3271, 2006 WL 3791361, * 5 (D.S.C. Dec. 22, 2006); see also Orr v. Clyburn, 290 S.E.2d 804, 806 (S.C. 1982); Tyndall v. National Education Centers, 31 F.3d 209 (4th Cir. 1994); S.C. Code Ann. & 1-13-10 et al (2003); cf. Cromer v. Greenwood Com'n of Public Works, No. 92-CP-24-392, 1993 WL 328182, *4 (S.C.Com.Pl. Feb. 3, 1993) ["The court notes that its ruling accords with the interpretation of federal employment discrimination laws upon which our state employment discrimination laws are modeled."].

[4]This cause of action is incorrectly labeled as Plaintiff's "Fifth" cause of action in the Complaint.

[5]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), D.S.C.  The Defendant has filed a motion for summary judgment.  As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[6]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment.  Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

2



was subsequently rehired in 2007. <u>See</u> Plaintiff's Deposition, p. 6.[7] Plaintiff testified that in 2008 she was promoted to temporary manager, and in 2011 was promoted to a permanent manager position. She moved to South Carolina to work for the Defendant at that time. <u>Id</u>. During Plaintiff's employment with the Defendant in South Carolina, she testified that her pay never decreased and that she received raises. <u>See</u> Plaintiff's Deposition, pp. 34, 153.

Plaintiff testified that in January/February of 2012 she complained to someone[8] about her manager, Andrea Wilson, who did not like Plaintiff's work and had apparently complained to Plaintiff about her inability to communicate in English. <u>See</u> Plaintiff's Deposition, pp. 30-34. Plaintiff testified that she worked for Wilson for approximately two months, and that she [Plaintiff] was then moved to another area around April 2012 due to her complaints about Wilson. <u>See</u> Plaintiff's Deposition, pp. 34-35, 151.

In February 2013, the Plaintiff, Dwight Stigler, a First Shift Manager,[9] Kyle Puskin,

---

[7]The parties have only submitted excerpts from the Plaintiff's deposition. These excerpts sometimes do not provide the complete context of the testimony, which makes it difficult to follow the sequence of events. However, the parties have not disputed in their briefs what the Plaintiff testified to in her deposition, including with regard to how the interview process worked, that she changed a score of another interviewer after their committee completed its joint evaluation, and the reasons given for her termination. Since, even giving Plaintiff the benefit of these inferences, she is not entitled to relief in this case, the undersigned has accepted the representations of the parties in their briefs concerning the substance of the deposition testimony provided. <u>See</u> discussion, <u>infra</u> & <u>supra</u>.

[8]Plaintiff testified that she could not remember to whom she complained. <u>See</u> Plaintiff's Deposition, p. 32.

[9]Plaintiff testified that Mr. Stigler was the same level manager as her, but worked on another shift. <u>See</u> Plaintiff's Deposition, p. 65; <u>see also</u> Complaint, ¶ 3.



an Industrial Engineer, and Seth Strickland, an Industrial Manager[10], were assigned to interview three candidates (Ms. Davis, Mr. Rasmussen, and Mr. Stone) to fill two (2) team leader positions in Plaintiff's area.  See Plaintiff's Complaint, ¶ 35; Answer, ¶ 35; Plaintiff's Deposition, pp. 64, 91. Each interviewer recorded their own separate score for each candidate on separate individual cards. See Defendant's Exhibits D, E, F, G and H.  They then discussed each candidate to arrive at a consensus score for each individual candidate.  See Defendant's Exhibit C.  Although the consensus scores are derived from the group discussion using the individual interviewer's scores as a guidance, the consensus score is not the average of the three interviewer's previous score cards.  See Plaintiff's Deposition, p. 206.   All three interviewer's scores along with the consensus score are then transcribed onto one card.  See Plaintiff's Deposition, pp. 74-75.

        Plaintiff testified that she was in the room with the other three interviewers and that they told her what score to record on the form for the line which reflected their individual assessment scores for each candidate.  See Plaintiff's Deposition, pp. 74-75.  Plaintiff testified that she talked to Stigler about one of his scores for Davis that Plaintiff believed was too low, and that he told her she could raise that score for Davis on his form, and Plaintiff did so.[11]  See Plaintiff's Deposition, pp. 84-85, 206, 210.[12]  Following the group discussion, the consensus scores for the three candidates

---

[10]Defendant contends that Strickland is an industrial engineer, citing to Plaintiff's deposition page 65, and does not refer to him as a manager.  However, since Defendant admitted that allegation paragraph of Plaintiff's Complaint and this dispute is not outcome determinative, the undersigned has assumed that Strickland is a manager for purposes of summary judgment.  See Plaintiff's Complaint, ¶ 35; Answer, ¶ 35; Defendant's Motion for Summary Judgment, p. 3.

[11]This occurred at the end of the meeting.  See Plaintiff's Deposition, p. 210.

[12]That change was made on Stigler's individual form, not the consensus form.  See Plaintiff's
(continued...)

4



had Rasmussen and Stone with the highest scores.  However, Plaintiff preferred Davis to Stone.  See Complaint, ¶ ¶ 37-39; Plaintiff's Deposition, p. 68.  Plaintiff testified that at the conclusion of the process she collected all the forms for her candidates (Davis, Rasmussen, and Stone) from the other three interviewers (Seth, Kyle and Dwight), while Stigler collected three forms for candidates for a position in his area.  See Plaintiff's Deposition, pp. 91-92.[13]

Plaintiff testified that during the meeting she put an X on the first box for Stone on the consensus form, which indicated Stone had scores on all dimensions of 3 or greater and that he was being recommended.  See Plaintiff's Deposition, p. 116; see also Defendant's Exhibit H. However, after the interview panel had concluded and Plaintiff had collected all of the forms, she testified that she scratched out that box after talking to her manager (Ken Rawls), and put an X in the box indicating that Stone was only being recommended with reservations.  See Plaintiff's Deposition, p. 116; see also Defendant's Exhibit H.  Plaintiff testified that she did not believe the Defendant's booklet required her to hire whoever had the highest consensus score and that she asked her managers and personnel to confirm that belief for her.  See Plaintiff's Deposition, p. 90.  Plaintiff testified that since Davis had the necessary score of over 3 (Davis had a score of 3.71), she asked Rawls to find out from personnel and from his manager (Andy Cygon) if it was okay for her to hire Davis instead of Stone.  See Plaintiff's Deposition, pp. 68, 78.  Plaintiff testified that they also talked to Brandon Weaver, the Human Resource Officer, about permission to hire Davis, and that she told

---

[12](...continued)
Deposition, pp. 84-85, 206.

[13]Plaintiff apparently is referring to the candidates applying for a team leader position in her area as "her candidates", and the candidates applying for a team leader position in Stigler's area as "his candidates."  See Plaintiff's Deposition, pp. 90, 92.



Weaver that the booklet did not specify that was how to hire a candidate, but "they still don't answer my question". See Plaintiff's Deposition, pp. 69, 78. Even so, Plaintiff testified that she did not tell anybody she had hired Davis until Rawls said "yes" that she could hire Davis, because Davis had a good work ethic. See Plaintiff's Deposition, p. 94.

Petitioner testified that when Stone found out he had the higher score among the candidates, he went to talk to Travis Massey (another Boeing manager) about not receiving the job despite his higher score. See Plaintiff's Deposition, p. 94. Massey then contacted Plaintiff and asked her to turn the interview form in, which she did.[14] See Plaintiff's Deposition, p. 94. Plaintiff was subsequently contacted by the Defendant's Human Resource Investigator, who had begun an investigation into her team lead selection process. See Complaint, ¶ 47; Answer ¶ 47. The investigation concluded that Plaintiff had altered the interview forms after the conclusion of her interview team's deliberations to favor her preferred candidate, and on or about March 17, 2013, Jennifer Boland-Masterson, Sam Brown and Kyle Addis met with Plaintiff and terminated her employment due to her falsification of documents in the team lead process. See Complaint, ¶ 49; Answer ¶ 49. The Defendant's Employee Corrective Action Memo signed on March 18, 2013 by Brown, states that Plaintiff was terminated because she had "falsified company documents in a team leader selection in order to manipulate the outcome towards your favored candidate. The Company deems your behavior unacceptable and in violation of the Expected Behavior for All Boeing

---

[14]As previously noted, Plaintiff had collected all the forms from her interview panel and had them in her possession. Plaintiff testified that she had not turned the form in earlier because she was still talking to her managers to see if she could hire Davis and was holding the form while she was waiting on their response. See Plaintiff's Deposition, p. 94.



Employees, as referenced in PRO-1909[15], Administration of Employee Corrective Action." <u>See</u> Defendant's Exhibit I.

### <u>Discussion</u>

The Defendant has moved for summary judgment on all of Plaintiff's claims. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, to avoid summary judgment the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. <u>Baber v. Hosp. Corp. of Am.</u>, 977 F.2d 872, 874-75 (4th Cir. 1992).

Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes for the reasons set forth hereinbelow that the Defendant is entitled to summary judgment in this case.

---

[15]<u>See</u> Defendant's Exhibit J.



# I.

## (Disparate Treatment Claims)[16]

In her disparate treatment claims, Plaintiff asserts that she was discriminated against on account of her sex, national origin, and race in violation of Title VII and § 1981, and on account of her age in violation of the ADEA, when she was terminated from her position. See generally, Plaintiff's First, Second, and Third Causes of Action. These claims require proof of intentional discrimination, either by direct evidence or by the structured analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[17] Plaintiff has not offered any direct evidence of race, sex, national origin, or age discrimination,[18] and therefore Plaintiff must have sufficient circumstantial

---

[16]Although Plaintiff also makes reference in her Complaint to a retaliatory discharge when discussing her disparate treatment claims, a retaliation claim is a separate and distinct claim from a disparate treatment claim. Miller v. City of Ithaca, No. 10–597, 2010 WL 3809842 at * 6 (N.D.N.Y. Sept. 22, 2010) [Noting that factual allegations set out a claim for retaliation, not for disparate treatment]. Plaintiff did not allege a separate cause of action based on retaliation in her Complaint. See Murphy v. Suffolk County Community College, No 10-251, 2011 WL 5976082 at * 7 (E.D.N.Y. Nov. 29, 2011)[Noting that disparate treatment claims and retaliation claims are distinct claims that should be alleged in separate counts.]. As such, the Defendant has only addressed Plaintiff's claims as disparate treatment claims in it's summary judgment motion. Plaintiff has not objected to this characterization, nor has she herself addressed any potential retaliation claim in her response.

[17]Although McDonnell Douglas is a Title VII case, the standards applicable to lawsuits filed under § 1981 are basically the same as the standards applicable to lawsuits under Title VII, with the same caselaw being used to evaluate a claim under either statute. See Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1050 (8th Cir. 2002)["In analyzing a claim . . . under section 1981, we apply the same standards as in a similar Title VII claim."]; Long v. First Union Corp. of Virginia, 894 F.Supp. 933, 945 (E.D.Va. 1995); Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997). Disparate treatment claims under the ADEA are also evaluated under the same standards as discrimination claims asserted under Title VII. Brennan v. Metropolitan Opera Ass'n Inc., 192 F.3d 310, 316 (2d Cir. 1996) ["The same standards govern disparate treatment claims arising under either Title VII or the ADEA."]; Loveless v. Sherwin-Williams Co., 681 F.2d 230, 238 (4th Cir. 1982).

[18]Direct evidence of discrimination is evidence which, if believed, would prove the existence
(continued...)

8



evidence to create a genuine issue of fact as to whether her termination occurred because of her race, national origin, sex and/or age under the <u>McDonnell Douglas</u> proof scheme to survive summary judgment.[19]

        The United States Supreme Court articulated a three-part formula for analyzing

---

[18](...continued)
of a fact without any inferences or presumptions. <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 56 F.3d 542, 548-549 (4th Cir. 1995), <u>rev'd on other grounds</u>, 517 U.S. 308 (1996); <u>Black's Law Dictionary</u>, 460 (6th Ed. 1990) (citing <u>State v. McClure</u>, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974)); <u>see</u> <u>Williams v. General Motors Corp</u>, 656 F.2d 120, 130 (5th Cir. 1981), <u>cert. denied</u>, 455 U.S. 943 (1982).

[19]Plaintiff's claims for race, sex and national origin discrimination could have also been considered under a "mixed-motive" analysis, even though she has presented only circumstantial, or in-direct, evidence of discrimination. <u>See</u> <u>Hill v. Lockheed Martin</u>, 354 F.3d 277, 284-285 (4th Cir. 2004); <u>Mereish v. Walker</u>, 359 F.3d 330, 339-340 (4th Cir. 2004); <u>cf.</u> <u>Taylor v. Virginia Union Univ.</u>, 193 F.3d 219, 232 (4th Cir. 1999) [en banc]; <u>see also</u> <u>Gross v. FBL Financial Services, Inc.</u>, 557 U.S. 167, 174 (2009) [mixed motive analysis not applicable to age claims under ADEA]. However, Plaintiff does not reference any mixed-motive theory in her filings, and neither party has discussed or analyzed Plaintiff's claims under a mixed-motive analysis. <u>See</u> <u>Hopes v. Roche</u>, No. 04-2963, 2005 WL 1812820 at * 6 n. 2 (D.Md. Aug. 2, 2005)(citing <u>Nagy v. Baltimore Life Ins. Co.</u>, 49 F.Supp. 2d 822, 836 n. 13 (D.Md. 1999)[Declining to engage in "mixed-motive" analysis where parties have not argued a mixed-motive theory.]).  In any event, even if this was a claim theory Plaintiff had intended to pursue, to survive summary judgment she would have to have evidence sufficient to create a genuine issue of fact that 1) the defendant took an adverse employment action against the plaintiff; and 2) plaintiff's race/sex/national origin was a motivating factor for the employment action. <u>Megivern v. Glacier Hills, Inc.</u>, No. 12-1330, 2013 WL 2097373, at * 16 (6th Cir. May 16, 2013); <u>Westmoreland v. Prince George's County, Md.</u>, 876 F.Supp.2d 594, 610-611 (D.Ma. 2012). "[T]he mixed-motive framework forces Plaintiffs to prove only that a forbidden factor - notwithstanding the presence of [other] permissible factors - caused the challenged conduct." <u>Westmoreland</u>, 876 F.Supp.2d at 612; <u>cf.</u> <u>Taylor v. Virginia Union University</u>, 193 F.3d 219, 232 (4th Cir. 1999)["The bonus for plaintiffs able to invoke the standard of liability applicable in mixed-motive cases is that proof by the employer that it would have reached the same determination without any discriminatory animus does not allow the employer to avoid liability altogether.  Rather, such proof only limits the remedies available to the plaintiff."]; <u>Mereish</u>, 359 F.3d. at 339-340.  However, for the reasons set forth in the body of this opinion, <u>infra</u>, Plaintiff has made no showing that her race, national origin, or sex was a motivating factor for the employment action at issue.  <u>See</u> <u>discussion</u>, <u>infra</u>.  Therefore, these claims of disparate treatment would not survive even if considered under a mixed-motive analysis.



discrimination cases in <u>McDonnell Douglas</u>.  <u>First</u>, Plaintiff must establish a prima facie case of

discrimination.  If a prima facie case is established, a rebuttable presumption is created that the

Defendant unlawfully discriminated against her.  <u>Second</u>, once this presumption has been

established, the burden of production shifts to the Defendant to show a legitimate, non-

discriminatory reason for its actions.  <u>Third</u>, if the Defendant shows a legitimate, non-discriminatory

reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the

Defendant's asserted reasons for its actions are a mere pretext for its true discriminatory motives,

and that the actions of the Defendant were really based on (in this case) Plaintiff's race, national

origin, sex, and/or age.  <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802-805; <u>Texas Dep't of Community</u>

<u>Affairs v. Burdine</u>, 450 U.S. 248, 252-256 (1981); <u>Conkwright v. Westinghouse Elec. Corp.</u>, 933

F.2d 231, 234-235 (4th Cir. 1991).[20]

  In order to meet the first prong of the <u>McDonnell Douglas</u> formula and establish her

prima facie case of race, national origin, sex or age discrimination, Plaintiff must show  (1) that she

is a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she was

subjected to an adverse employment action; and (4) that she was replaced by someone from outside

of her protected class, that other employees who were not members of her protected class were

treated more favorably, or there is some other evidence giving rise to an inference of unlawful

discrimination.  <u>See</u> <u>generally</u>, <u>Austen v. HCA Health Services of Virginia, Inc.</u>, No. 00-2359, 2001

WL 242203 at **1 (4th Cir. Mar. 12, 2001); <u>Hughes v. Bedsole</u>, 48 F.3d 1376, 1383 (4th Cir. 1995),

---

[20]Despite these shifting burdens of production, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout.  <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 252-253; <u>see</u> <u>also</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507 (1993).



cert. denied, 516 U.S. 870 (1995). See also Gilbert v. Penn-Wheeling Closure Corp., 917 F.Supp. 1119 (N.D.W.Va. 1996). Here, it is undisputed that Plaintiff is a member of a protected class [she is Asian, Thai, female, and over forty years of age], and that she was subjected to an adverse employment action when she was discharged. However, the Defendant argues that Plaintiff cannot show that she was adequately performing her job, nor is there any evidence that she was subjected to any adverse employment action under circumstances giving rise to an inference of unlawful discrimination.

Considering first whether Plaintiff was adequately performing her job, under the facts of this case the issue (at least for purposes of establishing a prima facie case) is Plaintiff's job performance up to the time of the investigation that led to her dismissal, not her conduct leading to the dismissal itself (based on decisions and findings made at that time). Cf. Obico v. Mission Creek Sr. Community, No. 11-3932, 2013 WL 622937 at * 5 (N.D.Cal. Feb. 15, 2013)[Finding that sufficient evidence existed that, up until the time of the incident (which resulted the in Plaintiff's termination), Plaintiff was performing his job satisfactorily]; Nana-Akua Takyiwaa Shalom v. Payless Shoesource Worldwide, Inc., 921 F.Supp.2d 470, 485 (D.Md. 2013)[Finding that Plaintiff was adequately performing her job for purposes of her prima facie case where she had consistently received strong performance evaluations up until the events culminating in her termination.]; see Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995)[The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged]. Defendant has not presented any evidence to dispute that, up until the time of her dismissal, Plaintiff had been satisfactorily performing her job. She had been working for the Defendant for a total of eight (8) years and had received various promotions and job



assignments during her period of employment.  Therefore, at least for purposes of her <u>McDonnell Douglas</u> prima facie case, the evidence before the Court is sufficient to show that  Plaintiff was satisfactorily performing her job up to the time of the events which culminated in her dismissal to avoid summary judgment on this ground.  <u>Cf</u>. <u>Chytka v. Wright Tree Service, Inc.</u>, 925 F.Supp.2d 1147, 1167 (D.Colo. 2013)[Finding that Plaintiff was adequately performing her job for purposes of her prima facie case where, prior to her discharge, she had never received any notice of poor performance or was otherwise not performing in a satisfactory manner.]; <u>Curry v. Pulliam</u>, 234 F.Supp.2d 921, 931 (S.D.Ind. 2002)[Where court proceeded to discussion beyond prima facie case when evidence of Plaintiff not performing his job satisfactorily (because of alleged harassment of co-worker) was also same essential issue that would be considered at the pretext level]; <u>see</u> <u>also</u> <u>Boyd v. Presbyterian Hosp.</u>, 160 F.Supp.2d 522, 535 (S.D.N.Y. 2001)["The second prong of a prima facie case, satisfactory job performance, is a fairly low threshold to meet."].

Turning then to the fourth prong of her prima facie case, no evidence has been presented to show who replaced Plaintiff in her position after her termination, if anyone.  <u>Cf</u>. <u>Brown v. McLean</u>, 159 F.3d 898, 905 (4th Cir. 1998)["In order to make out a prima facie case of discriminatory termination, a Plaintiff must ordinarily show that the position ultimately was filled by someone not a member of the protected class"].  Therefore, the Court must consider other possible evidence of discrimination.  As other such evidence, Plaintiff argues that other employees who were not members of her protected class were treated more favorably than she was, and that there was also other conduct by the Defendant's employees' which give rise to an inference of unlawful discrimination.

With respect to Plaintiff's argument that another employee outside of her protected



class was treated more favorably, Plaintiff identifies only Seth Strickland as falling into this category.[21] See Memorandum in Opposition, pp. 4, 7-8, 10; see Plaintiff's Deposition, pp. 206-207. Plaintiff testified that Strickland, who was a member of the committee selecting the candidates for the lead position, should have documented a "3" as Stigler's oral communication score, but that he instead put down a score of "5", and that Strickland was not terminated or investigated for making that recording. See Plaintiff's Deposition, p. 207. However, Plaintiff has presented no evidence that Stigler did not instruct Strickland to change that score, even testifying that she did not "remember" whether he had or not. See Plaintiff's Complaint, p. 210. Plaintiff also admits that scores can be changed during the deliberation process (which was the only time Strickland would have had access to the form at issue, since at the conclusion of this process all of the forms were given to the Plaintiff to keep). See Plaintiff's Deposition, pp. 75, 92, 110. Hence, Plaintiff has provided no evidence to show that Strickland engaged in any improper conduct, as it is *after* the meeting has concluded and all of the forms have been turned in that it is improper to change them (which is what Plaintiff was accused of having done). Id., pp. 92, 110, 116. Shivers v. S.C. Dept. of Corrections, No. 09-3357, 2011 WL 4549261, * 7 (D.S.C. Sept. 30, 2011)[Noting that to be similarly situated employees had

---

[21]Strickland is a male, the Defendant has not disputed that he is non-Asian and not from Thailand, and although Strickland's age has not been provided, it does not appear to be disputed that he is younger than the Plaintiff, and Plaintiff argues that where there is an age gap, an individual can still be subject to age discrimination even where the comparator is also over 40. Cf. O'Connor v. Consolidation Coin Caterers Corp., 517 U.S. 308, 312 (1996) ["The fact that one person in the protected class has lost out to another person in the protected class [i.e., someone also over 40] is thus irrelevant, so long as he has lost out because of his age"]. Therefore, for purposes of this motion only, and since it has no bearing on the outcome because the undersigned finds Strickland not to otherwise be a valid comparator; see, discussion, infra, Strickland has been assumed to be outside of Plaintiff's protected class with respect to sex, race, national origin, and age (as far as an age gap existing which may possibly give rise to her ADEA claim).



to have been "engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it"] (internal citations omitted); see also Smith v. Sunbelt Rentals, Inc., 356 Fed.Appx. 272 at ** 6-7 (11th Cir. Dec. 10, 2009)[To survive summary judgment, Plaintiff must show that she and the alleged comparable employee are "similarly situated in all relevant respects"].

Furthermore, Plaintiff has presented no evidence to show that, whatever the merits of Strickland's actions, the decisionmakers in Plaintiff's termination were ever even aware of this situation. Therefore, the undersigned can discern no unpunished improper conduct by a similarly situated comparator in this evidence; see Robinson v. United Parcel Services, Inc., No. 06-2601, 2007 WL 3484743 at * 4 (N.D.Ga. Nov. 14, 2007)[Proper comparator for purposes of a wrongful termination claim is one who is similarly situated in all relevant respects]; and without any comparator who engaged in the same conduct,[22] Plaintiff must have some other evidence to satisfy the fourth prong of her prima facie case. As discussed below, Plaintiff has presented no such evidence.

With respect to Plaintiff's claim that she was terminated due to age discrimination, Plaintiff's only evidence relating to this issue is her testimony that she once had lunch with Massey

---

[22]The Defendant also in its brief addresses whether Mark Alto or Paul Zimmerman were comparators for purposes of meeting the fourth prong, even though Plaintiff does not herself make any arguments in her memorandum in opposition with respect to either of these two individuals. In any event, although Plaintiff testified in her deposition that Mark Alto changed a form during another interviewing process for a different team lead position, she acknowledged that this change was made while all three interviewers were present and that she had no knowledge that he had made any changes other than when all three interviewers changed it together. See Plaintiff's Deposition, pp. 130-131. As for Zimmerman, Plaintiff only testified that he could testify as to how good a worker Davis was. See Plaintiff's Deposition, p. 200. Therefore, no showing has been made that Alto or Zimmerman engaged in conduct similar to that of the Plaintiff for which they were not terminated.



during which she complained that she had a lot of work to do and that she was fifty-seven (57) and getting old, to which Massey had responded "you're ready to retire, you need to retire". <u>See</u> Plaintiff's Deposition, pp. 157, 159. Plaintiff has provided no evidence to connect these stray comments by Massey about her retiring to her termination. Cf. <u>Monaco v. Fuddruckers, Inc.</u>, 1 F.3d 658, 660 (7th Cir. 1993)[supervisor's age-based remarks insufficient to preclude summary judgment for the employer absent a showing that they were "related to the employment decision in question"]. Massey did not have the ability to move Plaintiff from her shift or her work location; <u>see</u> Plaintiff's Deposition, p. 157; there is no evidence that Massey was involved in Plaintiff's termination, nor did Plaintiff remember anyone else ever making any comments about her age or about her retiring. <u>See</u> Plaintiff's Deposition, p. 159. <u>See</u> <u>Hawkins v. Pepsico, Inc.</u>, 203 F.3d 274, 281 (4th Cir. 2000) [affirming grant of summary judgment to the employer where the employee did not "show that...[the] problems were [age based] in nature"]. Rather, the evidence of record shows that someone named "Michael" investigated the incident that led to Plaintiff's termination, that Boland-Masterson, Brown and Addis were the individuals who met with Plaintiff to terminate her employment, and that her employment corrective action memo was signed by Brown. <u>See</u> Complaint, ¶¶ 47, 49; Answer ¶¶ 47, 49; Defendant's Exhibit I. Therefore, Plaintiff has failed to present evidence sufficient to meet the fourth prong for an ADEA prima facie case. <u>Gairola v. Virginia Dep't of General Services</u>, 753 F.2d 1281, 1288, n. 4 (4th Cir. 1985) [a case should be dismissed "...when the only evidence in support of the plaintiff's...case is based on unfounded conjecture...that her disfavorable treatment was the result of discrimination...."].



With regard to gender, while Plaintiff testified about males not getting "moved"[23] (even while she was conceding that Travis Massey, who is a white male, was moved once); see Plaintiff's Deposition, p. 165; and that she had also reported to Rawls that Massey had once referred to a female employee as being "stupid"; see Plaintiff's Deposition, p. 42; Plaintiff conceded during her deposition that her being moved had nothing to do with her gender. See Plaintiff's Deposition, pp. 151-152. Further, even with respect to her complaint to Rawls about Massey; see Plaintiff's Deposition, p. 136; when asked if Massey's conduct was because she was a female, she testified that "I didn't exactly say the word, I said it's because I came from Seattle, Washington, Everett, Washington, and I'm a female manager, and I don't want to say that I know more than him, but as he just doesn't like me." See Plaintiff's Deposition, p. 138. Cf. DiMaso v. Duo-Fast Corp., No. 88-1661, 1990 WL 165326, at *5 (N.D.Ill. Oct. 25, 1990)["Isolated and ambiguous statements, as a matter of law, are too abstract to support a finding of age discrimination"]; order vacated on reconsideration on other grounds by, 1990 WL 205818 (N.D. Ill. Dec. 4, 1990). In any event, as previously discussed, Plaintiff has presented no evidence to show that Massey was a decisionmaker in her case or had anything to do with her termination, and she has provided no evidence to show a discriminatory animus based on her gender on the part of anyone involved in her termination. Rucker v. Greenville Co. Sheriff Dep't., No. 10-1533, 2012 WL 951789, * 2 (D.S.C. March 20, 2012)[Conclusory allegations or denials, without more, are insufficient to preclude the granting of a summary judgment motion]; Boden v. U.S. Amada Ltd., 978 F.Supp. 657, 659 (E.D.N.C. 1997) [former employee's own subjective belief and conclusory statements that he had been discriminated

---

[23]Apparently referring to being transferred from one position to another.



against are not sufficient to raise reasonable inference of unlawful discrimination]. Therefore, she has presented no evidence to create a genuine issue of fact with respect to the fourth prong of her prima facie case for sex discrimination.

With regard to national origin and/or race,[24] Plaintiff testified she felt that her English had something to do with some of her problems while she worked for the Defendant, because she sometimes had trouble trying to explain things in English. See Plaintiff's Deposition, p. 139. Plaintiff's testimony on this issue concerned an earlier manager, Andrea Wilson, who (according to the Plaintiff) did not like Plaintiff's work product and who had apparently complained to Plaintiff about her inability to communicate well in English. See Plaintiff's Deposition, pp. 30-34. However, Plaintiff has not in any way connected Wilson to any of the actions which led to her termination, as Plaintiff's testimony about how Wilson purportedly did not like her work or communication skills was from February 2012, over a year before Plaintiff was terminated in March 2013. Wilson stopped being Plaintiff's supervisor around April 2012, and had nothing to do with, and no involvement in, the events of 2013 that led to Plaintiff's discharge. The evidence reflects that Plaintiff even received a raise in March 2012, when Wilson was still her manager (and *after* Wilson had purportedly

---

[24]It is unclear whether Plaintiff is attempting to assert a national origin claim under her § 1981 cause of action, because she really only mentions her national origin (Thai) as being a basis for her claims early on in her Complaint. See Complaint, at ¶14. Section 1981 is not applicable to "national origin" claims. See Lee v. Sony BMG Music Entertainment, Inc., 557 F.Supp.2d 418, 424 (S.D.N.Y. 2008)["[N]ational origin-based discrimination claim brought under section 1981 [ ] dismissed with prejudice, because that statute does not cover national origin."]. Plaintiff's identification of herself as an "Asian", however, is sufficient to allow her § 1981 claim to proceed. See Fonseca v. Sysco Food Sevs. of Arizona, Inc., 374 F.3d 840 (9th Cir. 2004)[While national origin discrimination is not within ambit of § 1981, race has been defined broadly to cover immigrant ethnic groups.]; cf. Topadzhilchan v. Glendale Police Dept., No. 10-387, 2010 WL 2740163, at * 5 (C.D.Cal. July 8, 2010) [Finding that Plaintiffs, as Armenian-Americans, were members of an ethnic minority for purposes of a § 1981 discrimination claim.].



complained bout Plaintiff's work).  See Plaintiff's Deposition, p. 203.  As such, Plaintiff has failed

to present a genuine issue of fact as to whether Wilson's opinion of her national origin and/or race

was connected to the decision to terminate her.  Cook v. CSK Transp. Corp., 988 F.2d 507, 513 (4th

Cir. 1993) ["[U]nsupported allegations do not establish a prima facie case of [ ] discrimination...."];

see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) [there must be evidence on

which a jury could reasonably find for the Plaintiff]; Evans v. Technologies Applications & Serv.

Co., 80 F.3d 954, 960 (4th Cir. 1996) ["unsubstantiated allegations" are insufficient to defeat

summary judgment].

       Finally, the undersigned is constrained to note that with respect to the decision made

to terminate Plaintiff's employment, there is no dispute in the evidence provided to this Court that

Plaintiff did in fact engage in the conduct (changing the marking score) which led to her termination.

Even if (as argued by the Plaintiff) the Defendant was wrong to have terminated her for this conduct,

treated plaintiff unfairly, or was simply incorrect in its findings and decision, that is not evidence of

race, sex, national origin and/or age discrimination.  See Kariotis v. Navistar Intern. Transp. Corp.,

131 F.3d 672, 680 (7th Cir. 1997) ["Discrimination statutes allow employers to discharge employees

for almost any reason whatsoever (even a mistaken but honest belief) as long as the reason is not

illegal discrimination.  Thus when an employee is discharged because of  an employer's honest

mistake, federal anti-discrimination laws offer no protection."]; Dowe v. Total Action Against

Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998).  Whether this was the right decision

for the Defendant to have made under the circumstances is not for this Court to determine, as the

only question before this Court is whether there is any evidence sufficient to present a genuine

factual issue that Plaintiff's discharge was because of her sex, her race, her nationality, or her age.

18



*Cf*. Rudolph v. Hechinger, 884 F.Supp. 184, 188 (D.Md. 1995) ["Title VII (does) not protect against unfair business decisions - only against decisions motivated by unlawful animus"], citing Turner v. Texas Instruments, Inc., 555 F.2d 1251, 1257 (5th Cir. 1977); Colbert v. Tapella, 677 F.Supp. 2d 289, 295 (D.D.C. 2010)(quoting Hairsine v. James, 517 F.Supp.2d 301, 308-309 (D.D.C. 2007)["[T]he scope of review in employment discrimination cases is more narrow than [Plaintiff] wishes because federal courts are not review boards for local employment decisions . . . . A personnel decision can be silly, it can be unfair, and it can be short-sighted without being illegal; Title VII protects discriminatory decisions, not wrong ones."]). Plaintiff has failed to present any such evidence.  *Cf*. Nichols v. Caroline County Bd. of Educ., 123 F.Supp.2d 320, 327 (D.Md. 2000)[Plaintiff's contention that supervisors subjected him to adverse employment actions "because I am who I am" insufficient to establish [discriminatory] character to their disagreements and misunderstandings].

Therefore, as Plaintiff has failed to establish the necessary elements of her disparate treatment prima facie case, her First, Second, and Third Causes of Action should be dismissed. Boden, 978 F.Supp. at 659 [former employee's own subjective belief and conclusory statements that he had been discriminated against are not sufficient to raise reasonable inference of unlawful discrimination]; Rucker, 2012 WL 951789, * 2 [Conclusory allegations or denials, without more, are insufficient to preclude the granting of a summary judgment motion].

## II.

### Breach of Contract

Plaintiff's final claim is that she and the Defendant entered into an employment contract by virtue of "a number of documents" she signed when she was hired; *see* Complaint, ¶ 98;



and that her termination by the Defendant breached her contract of employment. However, the Defendant argues in its motion for summary judgment, inter alia, that with respect to employment there is a presumption in South Carolina that employees are at-will; see Prescott v. Farmer's Tel. Co-Op., Inc., 516 S.E.2d 923, 927, n. 8 (S.C. 1999)[In South Carolina, "there is a presumption of at-will employment']; cf. Perrine v. G4S Solutions (USA), Inc., No. 11-1210, 2011 WL 3563110, at * 2 (D.S.C. Aug. 9, 2011); Amason v. P. K. Management, LLC, No. 10-1752, 2011 WL 1100169, at * 6 (D.S.C. Mar. 23, 2011); and that Plaintiff has failed to provide any evidence sufficient to show that she had a contract of employment or to take her position outside of an at-will employment relationship, specifically noting that Plaintiff has never identified what any of these "number of documents" are or how they establish a "contract" of employment.

Defendant is correct that in order to survive summary judgment with respect to her breach of contract claim, Plaintiff needs to have presented sufficient factual evidence that she and the Defendant entered into mandatory and binding terms for her employment such as a definite term of employment, buyout provisions, right to severance pay, or other such indices so as to establish a genuine issue of fact whether a contract of employment existed. Cf. Wadford v. Hartford Fire Ins. Co., No. 87-2872, 1988 WL 492127 at *5 (D.S.C. 1988) ["A review of the relevant authorities... reveals that a policy or representation must limit the duration of employment or the employer's right to terminate employment in order to alter at-will status. Other terms and conditions of employment, including pay, benefits, job duties, or location of performance may be changed prospectively by either party without violating an employment contract with an indefinite term."]. Plaintiff has failed to present any evidence of any such language sufficient to establish a plausible claim that she had a "contract" of employment by virtue of any document. Cf. Small v. Springs Industries, Inc., 357

20



S.E.2d 452, 455 (S.C. 1987)[only policy drafted in sufficiently mandatory terms may serve to alter at-will employment status]; <u>Grant v. Mount Vernon Mills, Ins.</u>, 634 S.E. 2d 15, 20 (S.C.Ct.App. 2006); <u>Storms v. Goodyear Tire & Rubber Co.</u>, 775 F.Supp. 862, 867 (D.S.C. 1991) [noting that language cited by the employee was "not couched in mandatory terms and [did] not contain language that specifically [limited] the employer's right to demote or terminate [the Plaintiff] without cause"]; <u>Horton v. Darby Electric Co., Inc.</u>, 599 S.E.2d 456, 460-461 (S.C. 2004) [Manual containing progressive disciplinary procedure did not alter employee's at-will status]. Indeed, Plaintiff did not even address this claim or Defendant's arguments for dismissal of this claim in her response to the Defendant's summary judgment motion, or offer any rationale for why this claim should not be dismissed.[25]

Therefore, Plaintiff's Fourth Cause of Action for Breach of Contract should be dismissed. <u>Cf.</u> <u>Harper v. United States</u>, 423 F.Supp. 192, 196 (D.S.C. 1976)["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"].

### **Conclusion**

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment to dismiss Plaintiff's claims under Title VII, § 1981, the ADEA, and her state law claim for breach of contract as set forth in her First, Second, Third, and Fourth Causes of Action be

---

[25]As such, this claim could be deemed to have been abandoned. <u>See</u> <u>Eady v. Veolia Transp. Services, Inc.</u>, 609 F.Supp.2d 540, 560-561 (D.S.C. 2009)["The failure of a party to address an issue raised in summary judgment may be considered a waiver or abandonment of the relevant cause of action."]; <u>accord</u>, <u>Ferdinand-Davenport v. Children's Guild</u>, 742 F.Supp.2d 772, 777 (D.Md. 2010); <u>Jones v. Family Health Ctr., Inc.</u>, 323 F.Supp.2d 681, 690 (D.S.C. 2003); <u>Mentch v. Eastern Savings Bank, FSB</u>, 949 F.Supp. 1236, 1247 (D.Md. 1997).



**granted,** and that this case be **dismissed.**

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

April 28, 2016
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4ᵗʰ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

